FILED

2012 Sep-18  AM 09:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BRANNON H. SIRMON, et al., | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 7:10-cv-2717-LSC |
| | ) | |
| WYNDHAM VACATION | ) | |
| RESORTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

## I.   Introduction

Before the Court are two motions to dismiss filed by Defendants on December 1, 2011. (Docs. 62 & 64.) For the reasons described below, the motions are due to be DENIED.

## II.   Factual Background and Procedural History

Defendant Wyndham Vacation Resorts, Inc. ("WVR") is a wholly-owned subsidiary of Wyndham Vacation Ownership ("WVO"; collectively "Wyndham"), one of the world's largest timeshare companies. Wyndham develops, markets, and sells vacation ownership interests, and provides consumer financing to owners. Ownership interests are reflected by an allocation of "points" proportionate to each

owner's interest. These points can then be used to make reservations at various resorts.

Plaintiffs are among Wyndham's top point holders, and belong to the highest level of a three-tiered VIP Program. They claim to have been enticed to the highest levels of ownership by Wyndham's repeated promises about the benefits that would come with additional points. Plaintiffs complain that Wyndham has altered or eliminated many of these expected benefits, including the promise of unlimited guest certificates and the ability to sell or transfer points to other owners. Additionally, Plaintiffs allege that the merger of Wyndham's point program with Resort Condominiums International, LLC ("RCI"), has diluted the value of Wyndham ownership and has made it difficult or impossible to make some reservations. Plaintiffs contend that deceptive sales practices, changes to benefits, and devaluing of ownership are all part of a "systematic scheme" directed at Plaintiffs. (Doc. 60 at 8.)

Plaintiffs filed a complaint on October 7, 2010, against WVO, WVR, and RCI (collectively "Defendants"). (Doc. 1.) The original complaint was superceded by an amended complaint (the "Complaint") that was filed on November 11, 2011. (Doc. 60.) The Complaint contained thirteen separate claims for relief: fraud; fraud in the inducement; suppression; breach of contract; wantonness; breach of fiduciary duty; negligence; negligent hiring, training, supervision, and retention; wanton hiring,

training, supervision, and retention; unjust enrichment; a claim for an accounting; a claim for injunctive relief; and a claim for civil conspiracy to commit fraud, fraudulent inducement, and suppression. (*Id.*)

On December 1, 2011, Defendants moved this Court to dismiss all of these claims. (Docs. 62 & 64.) Defendants' motions to dismiss raised an array of reasons why the Complaint is due to be dismissed, including an assertion that the Complaint constituted "shotgun pleading" rendering it impossible to know which allegations of fact were intended to support each individual claim for relief. (Docs. 63 at 19–20.) On April 17, 2012, this Court issued an order on Defendants' motions, denying dismissal as to Plaintiffs' fraud-based claims (Counts 1-3 of the Complaint) and granting dismissal as to Plaintiffs' claim for injunctive relief (Count 12). (Doc. 100.) The Court deferred ruling on the remaining counts until Plaintiffs had an opportunity to file an Addendum to the Complaint "identifying which specific factual paragraphs are being offered in support of which specific claims." (*Id.* at 14.)

In accordance with the Court's instructions, Plaintiffs filed an Addendum on May 29, 2012. (Doc. 110.) This Court has reviewed the Addendum, and is now prepared to rule on the remainder of Defendants' motions for dismissal.

## III.   Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[1] The plaintiff must plead "enough facts to state a claim

---

[1]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by

that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful

---

showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

conduct rather than the unlawful conduct the plaintiff would ask the court to infer."

*Id.* (quoting *Iqbal*, 556 U.S. at 682).

## IV.    Discussion

### A.    Count 4: Breach of Contract

Count 4 of Plaintiffs' Complaint asserts a breach of contract claim against Defendants. (Doc. 60 at 18.) "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)).

Defendants' motions to dismiss argue this claim was pleaded in a "shotgun pleading" manner and that the Complaint only provided a "formulaic recitation of the elements" of the cause of action. (Doc. 63 at 25–26.) In its last order, this Court acknowledged that the original drafting of the Complaint was indeed deficient. (Doc. 100 at 13–14.) However, the Court allowed Plaintiffs an opportunity to file an Addendum identifying which factual assertions in the Complaint supported the existence of a contract, the parties to it, and how the contract was breached. (*Id.*)

The Complaint, when considered along with the Addendum now filed, adequately states a claim for breach of contract. For example, the Addendum

identifies paragraph 29 of the Complaint as one of several paragraphs providing the factual support for this claim. (Doc. 110 at 1.) That paragraph alleges that Defendants promised Plaintiffs unlimited free guest certificates but later repudiated that promise and charged a fee of $99 or $129 for the same. (Doc. 60. at 6.) This paragraph, standing alone, provides facts that could satisfy each of the elements listed in *Shaffer*. Assuming, as the Court must at this stage in the proceeding, that the allegations in the Complaint are true, Plaintiffs have alleged facts which could "plausibly give rise to an entitlement to relief." *American Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 664). Therefore, Defendants motions to dismiss are due to be denied as to the breach of contract claims.

### B.   Count 5: Wantonness; Count 7 Negligence; Count 8: Negligent Hiring, Training, Supervision and Retention; and Count 9: Wanton Hiring, Training, Supervision and Retention

The Court considers counts 5, 7, 8 and 9 of the Complaint together because Defendants have essentially argued that these claims rise and fall as one. First, Defendants argue that Plaintiffs' negligence claim fails because it is based solely on contractual duties that cannot support a tort cause of action under Alabama law. (Doc. 63 at 15–17.) Defendants, then, contend that the claims in counts 5, 8 and 9 fail because they are derivatives of that negligence claim. (*Id.* at 17–20.)  Specifically, Defendants argue Plaintiffs cannot establish negligent hiring, training, supervision and

retention because they cannot establish underlying negligence, and that they cannot establish wantonness-based claims because wantonness is simply a higher standard of negligence. (*Id.*) Given the nature of Defendants' arguments, this Court must determine whether Plaintiffs' negligence claim is or is not actionable.

As an initial matter, the Federal Rules of Civil Procedure clearly permit a plaintiff to plead alternative claims for relief based on a single set of facts. Specifically, the rules provide that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Nevertheless, Defendants contend that alternative pleading is not permissible when the alternative claims are breach of contract and negligence.

In support of this position, Defendants cite *Morgan v. South Central Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala. 1985). In *Morgan*, the Alabama Supreme Court noted a distinction between claims for nonfeasance which do not give rise to tort liability (i.e., failure to perform a contract) and claims for misfeasance that do (i.e., negligent affirmative conduct). *Id.* The court, however, did not suggest that tort-based misfeasance claims cannot exist in the context of a contractual relationship. In fact, just the opposite is true—the court found the defendants liable in tort notwithstanding

the fact that the "relationship between plaintiffs and defendants was primarily a contractual one." *Id.* The *Morgan* court reasoned "there is clearly tort liability" in contractual situations "where plaintiffs were . . . dependent on [defendants], defendants were aware of that dependency, and . . . [defendants performed] in . . . a negligent and slipslod manner." *Id.*

Taking the allegations in the Complaint as true, as the Court must, Plaintiffs have stated a claim for negligence under Alabama law. As in *Morgan*, Plaintiffs allege that they depended on Wyndham to perform under the contract, that Wyndham was aware of that dependency, and that the contract was performed in such a negligent manner that Wyndham should be subject to tort liability. Furthermore, the Addendum identifies specific factual allegations in the Complaint that support Plaintiffs' negligence claim. Although Defendants contend Plaintiffs' allegations are limited to claims of nonfeasance, the Court disagrees. This Court finds no reason why Plaintiffs' negligence claim cannot cognizably exist alongside a claim for breach of contract.

Therefore, Defendants' motions to dismiss as to the negligence claim in count 7 are due to be denied. The Court likewise declines to dismiss counts 5, 8, and 9, since the crux of Defendants' argument is that these claims cannot stand without a valid claim for negligence.

### C.    Count 6: Breach of Fiduciary Duty

Count 6 of the Complaint alleges Defendants' breached a fiduciary duty owed to Plaintiffs. Alabama law recognizes fiduciary relationships in a variety of contexts. Fiduciary responsibilities are not limited to a confined set of relationships, but rather apply "to all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise." *Morgan Plan Co. v. Vellianitis*, 116 So. 2d 600, 603 (Ala. 1959).

Defendants have not convinced the Court that no legally cognizable fiduciary relationship could exist in this case. Defendants cite *Wilchombe v. Tee Vee Tons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009), for the proposition that "[b]usiness relationships are not ordinarily confidential relationships." (Doc. 73.) But *Wilchombe* does not advance Defendants' position. As an initial matter, *Wilchombe* is discussing fiduciary relationships as they exist under Georgia law, not Alabama law. 555 F.3d at 959. Furthermore, *Wilchombe* describes exceptions to the rule that could aptly apply in this case. For instance, the court said confidential relationships may arise in the business setting where the parties have "a history of business dealings with each other." *Id.*

Although Defendants argue that the parties always engaged each other in arms-length transactions, the allegations in the Complaint, taken as true, suggest a relationship that was more involved than your typical buyer/seller arrangement. Plaintiffs have alleged that Wyndham representatives and salespeople acted as

counselors and advisors over a period of several years. For example, the Complaint states: "Defendants continued to reassure Plaintiffs that they would be able to continue renting *and that Defendants were looking out for their best interest*." (Doc. 60 ¶ 35, emphasis added.) Plaintiffs' are not required, at this stage of the proceeding, to provide detailed  factual allegations. Instead, Plaintiffs must simply provide enough factual support "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs have satisfied that burden here and, therefore, Defendants' motions to dismiss as to count 6 are due to be denied.

### D.    Count 10: Unjust Enrichment

Count 10 of Plaintiffs' Complaint asserts a claim for unjust enrichment. There are two circumstances where Alabama recognizes unjust enrichment claims. "The retention of a benefit is unjust if (1) the donor of the benefit . . . acted under mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Mantiply v. Mantiply*, 951 So. 2d 638, 654–55 (Ala. 2006) (quoting *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)).

The Complaint alleges that Defendants employed deceptive and fraudulent sales practices to entice Plaintiffs to pay Wyndham substantial sums of money while knowing they never intended to make true on their promises. Although these

allegations are not yet proven, at this stage of the proceeding the Court must accept their veracity. And these allegations, taken as true, are sufficient to support a claim for relief.

Defendants contend that the unjust enrichment claim must fail because Plaintiffs other claims are based upon the existence of an express contract. (Doc. 63.) In *Vardaman v. Bd. of Educ.*, the Alabama Supreme Court stated: "It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter." 544 So. 2d 962, 965 (Ala. 1989). While it is perhaps true that both contractual and quasi-contractual relief cannot be granted as to the same subject matter, it is presently too early in this proceeding to determine which form of relief, if any, is appropriate.

As stated before, the Federal Rules of Civil Procedure undoubtedly allow a plaintiff to plead alternative forms of relief, even if the two claims are inconsistent: "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Although Plaintiffs may ultimately be incapable of recovering quasi-contractual damages on an unjust enrichment theory, this Court will not prevent them from developing the claim through the discovery process. Therefore, Defendants' motions to dismiss as to count 10 are due to be denied.

### E.    Count 11: For an Accounting against All Defendants

Count 11 of the Complaint requests relief in the form of an accounting against all Defendants. There are a variety of reasons why an Alabama court may grant an accounting. *See* Ally Windsor Howell, *Tilley's Alabama Equity* § 24:2 Basis for Ordering an Equitable Accounting (5th ed. 2012). Circumstances when an accounting has been deemed appropriate include situations where there exists a fiduciary relationship between the parities and under which the duty to keep account arises, *Leslie v. Pine Crest Homes, Inc.*, 388 So. 2d 178 (Ala. 1980); when the defendant has engaged in fraud or wrongdoing sufficient to give rise to a duty to account, *Tolleson v. Henson*, 93 So. 458 (1922); and when necessity for discovery of matters wholly within the defendant's knowledge renders an accounting an appropriate remedy, *Nelson Realty Co. v. Darling Shop of Birmingham, Inc.*, 101 So. 2d 78 (1957); *Orkin Exterminating Co. of North Ala. v. Krawcheck*, 123 So. 2d 149 (1960). The Complaint alleges enough facts to demonstrate an entitlement to relief under one of these grounds. Accordingly, Defendants' motions to dismiss are due to be denied as to Count 11.

## F.   Count 13: Civil Conspiracy to Commit Fraud, Fraudulent Inducement and Suppression

Count 13 of the Complaint raises a claim against Defendants for civil conspiracy to defraud. A civil conspiracy is "a combination of two or more individuals to

accomplish an unlawful purpose or to accomplish a lawful end by unlawful means."

*McLemore v. Ford Motor Co.*, 628 So. 2d 548, 550 (Ala. 1993) (citing *Barber v. Stephenson*, 69 So. 2d 251 (1953) and *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988)). A conspiracy claim, by its nature, is difficult to plead, and courts accordingly allow greater flexibility. As noted in *Eidson*:

> A great quantum of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the scheme or undertaking engaged in. The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action.

527 So. 2d at 1285 (quoting *O'Dell v. State*, 117 So. 2d 164, 168 (1960)).

Defendants correctly note that under Alabama law, a conspiracy "cannot exist between a corporation and its agents or employees, since the acts of agents and employees acting within the line and scope of their employment are considered the acts of the corporation itself." *Phillips v. Amoco Oil Co.*, 614 F. Supp. 694, 702 n.10 (N.D. Ala. 1985) (citations omitted). This is known as the intracorporate conspiracy doctrine. But this doctrine does not render a corporate entity entirely immune from allegations of civil conspiracy. While a corporation cannot conspire with itself, it may be found liable for conspiring, through its agents, with another corporate entity or third party.

Thus, insofar as the Plaintiffs seek recovery for a conspiracy between Wyndham and its agents, employees, or salespeople, the claim is legally precluded. The Court, however, does not read the pleadings in such a limited manner. Rather, Plaintiffs have alleged facts that could indicate a conspiracy among the various corporate entities or other third parties. Moreover, the Court must remain aware that at this early stage of the proceeding Plaintiffs still require additional information to fully establish their claim. Plaintiffs have asserted that Defendants' company structure is "extremely opaque," that it includes "all sorts of agreements and cross-agreements with affiliate companies," and involves a corporate structure that "embodies dozens of interrelated subsidiaries, trusts, non-profit associations, etc." (Doc. 60 ¶ 43.) Defendants do not seem especially eager to supply the wanting clarity, and Plaintiffs should be allowed an opportunity use discovery to determine the scope of the corporate relationships and to conclude whether their conspiracy claim is with or without merit. Accordingly, Defendants' motions to dismiss as to Count 13 are due to be denied.

## G.    Failure to Join an Indispensable Party

The final basis for dismissal asserted by Defendants is that Plaintiffs failed to join an indispensable party, namely the FairShare Vacation Plan Use Management Trust (the "Trust"). The Court is not convinced that the Trust is a necessary party to this litigation and sees no reason why it cannot accord complete relief among the

current parties to the lawsuit without the inclusion of the Trust. There is no indication the Trust played any role in the allegedly fraudulent sales practices employed by Defendants. Furthermore, the Court finds no reason why a jury could not award damages against the current Defendants without adversely impacting the rights of the Trust. Accordingly, Defendants' motions to dismiss for failure to join an indispensable party are due to be denied.

## V.    Conclusion

For the reasons described above, Defendants motions to dismiss (Docs. 62 & 64) are due to be DENIED as to the remaining counts of Plaintiffs' Complaint not addressed in this Court's Order of April 17, 2012 (Doc. 100). A separate order will be entered consistent with this opinion.

Done this 18th day of September 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]